IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LYNN JESTER, et al.,

    Plaintiffs,

v.                                          Civil Action No. 2:13-cv-18843

C. R. BARD, INC.,

    Defendant.

MEMORANDUM OPINION AND ORDER
*(Defendant's Motion for Summary Judgment)*

Pending before the court is defendant C. R. Bard's ("Bard") Motion for Summary Judgment [ECF No. 52]. As set forth below, Bard's Motion for Summary Judgment is **GRANTED IN PART** with respect to the plaintiffs' claims for manufacturing defect, breach of implied warranty, breach of express warranty, and negligent inspection, packaging, marketing, and selling. Bard's Motion for Summary Judgment is **DENIED IN PART** with respect to the plaintiffs' strict liability and negligent failure to warn claims.

## I. Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 58,000 cases currently pending, approximately 8,000 of

which are in the Bard MDL, MDL 2187. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions and summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order ("PTO") # 102, No. 2:12-md-2187 [ECF No. 729]. This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Ms. Jester's case was selected as a Wave 1 case by the plaintiffs. PTO # 118, No. 2:12-md-2187 [ECF No. 841].

Ms. Jester was surgically implanted with the Align Urethral Support system (the "Align") by Dr. Thomas Bormes at Lake Forest Hospital in Lake Forest, Illinois. Am. Short Form Compl. 4–5 [ECF No. 28]. As a result of complications allegedly caused by the Align, the plaintiffs bring the following claims against Bard: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; loss of consortium; and punitive damages[1]. *Id.* at 5. In the instant motion, Bard moves for partial summary judgment on the grounds that the plaintiffs' claims are without evidentiary support. Bard's Mem. in Supp. of Mot. for Summ. J. 1 ("Mem. in Supp.") [ECF No. 49].

---

[1] Bard also filed a Motion for Partial Summary Judgment on Punitive Damages Claims [ECF No. 50]. That motion is addressed in a separate order.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105

F.3d 188, 191 (4th Cir. 1997).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as the plaintiffs did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan.

17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Jester was implanted with the Align in Illinois. Thus, the choice-of-law principles of Illinois guide this court's choice-of-law analysis.

I find, as the parties agree, that these principles compel application of Illinois law. Illinois has adopted the most-significant-relationship test as enumerated in Restatement (Second) of Conflict of Laws. *See Townsend v. Sears, Roebuck & Co.,* 879 N.E.2d 893, 901 (Ill. 2007); *Gregory v. Beazer E.,* 892 N.E.2d 563, 578 (Ill. 2008). Under that test, courts should consider the following factors: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and business of the parties, and (4) the place where the relationship, if any, between the parties is centered. *See Townsend,* 879 N.E.2d at 901 (citing Restatement (Second) of Conflict of Laws § 145(2), at 414 (1971)). Here, Ms. Jester was implanted in Illinois and any alleged injuries occurred in Illinois. Therefore, I apply Illinois' substantive law to the plaintiff's claims in this case.

## III.  Analysis

Bard argues that it is entitled to partial summary judgment because the plaintiffs lack evidentiary support on the following claims: manufacturing defect, both on theories of negligence and strict liability, breach of express warranty, breach of implied warranty, and negligent inspection, marketing, packaging and selling. The

plaintiffs have agreed not to pursue claims for manufacturing defect, breach of express warranty, and breach of implied warranty. Accordingly, Bard's Motion on the plaintiffs' claims for manufacturing defect, under theories of strict liability and negligence, breach of express warranty, and breach of implied warranty is **GRANTED.** Below, I address Bard's remaining arguments pertaining to the plaintiffs' negligence claim.

Under Illinois law, "[a] product liability action asserting a claim based on negligence…falls within the framework of common law negligence." *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007). "[A] plaintiff must establish the existence of a duty of care owed by the defendant, a breach of that duty, an injury proximately caused by that breach, and damage." *Id.*

Bard contends that the plaintiffs' claims for negligent inspection, packaging, marketing, and selling of the Align fail for lack of evidence. The plaintiffs argue that Bard misconstrues the nature of their negligence argument, and that their allegations regarding the alleged negligent inspection, marketing, labeling, packaging, and selling of the Align comprise part of their general negligence claim, rather than distinct theories of recovery. In short, the plaintiffs assert that Bard failed to adequately study or test its mesh products, including the Align, to determine if the products were adequately safe.

A review of the plaintiffs' Count I in the Master Complaint, Master Compl. ¶¶ 62–67, No. 2:10-md-2187 [ECF No. 199], reveals that the plaintiffs asserted three distinct negligence theories under "Count I." The bulk of the Count I allegations make

out claims for negligent failure to warn and negligent design defect.   The other negligence allegations posit that Bard was "negligent…in designing, manufacturing, marketing, labeling, packaging, and selling" the Align. *Id.* at ¶ 64. Thus, the plaintiffs' concerns that Bard is misconstruing the plaintiffs' negligence claim are meritless; Bard simply chose to address the plaintiff's different theories of negligence separately. However, apart from reciting allegations that form the plaintiffs' failure to warn and design defect claims, the plaintiff does not offer sufficient support to create a genuine dispute that Bard breached a legal duty that caused the plaintiff's injuries in their "inspection, marketing, labeling, packaging, or selling" of the Align. Accordingly, Bard's Motion on these points is **GRANTED**.

## IV. Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's Motion [ECF No. 52] is **GRANTED IN PART** with respect to the plaintiffs' claims for manufacturing defect, breach of implied warranty, breach of express warranty, and negligent inspection, packaging, marketing, and selling. Bard's Motion is **DENIED IN PART** with respect to the plaintiffs' claims for strict liability failure to warn and negligent failure to warn.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 2. 2016

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

7